# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

MARTHA KNIGHT, )
)
    Plaintiff, )
)
v. ) Case No.: 6:17-cv-01741-JHE
)
COMMISSIONER OF SOCIAL )
SECURITY, )
)
    Defendant.

## MEMORANDUM OPINION[1]

Plaintiff Martha Knight ("Knight") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Doc. 1). Knight timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Knight protectively filed an application for a period of disability and DIB and an application for SSI on January 27, 2015. (Tr. 166-178). Both applications alleged an onset date of October 1, 2013. (Tr. 166, 170). On May 22, 2015, the Commissioner denied both claims, (tr. 99-106), and on June 10, 2015, Knight requested a hearing before an administrative law judge

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

("ALJ"), (tr. 114-15). On August 31, 2016, the ALJ held a hearing, (tr. 37-72), and subsequently denied Knight's claim on November 1, 2016, (tr. 14-32). Knight sought review by the Appeals Council, but it denied her request for review on August 29, 2017. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On October 12, 2017, Knight initiated this action. (Doc. 1).

On the date of her hearing, Knight was fifty-six years old, with an 11th-grade education and previous work as a laborer, babysitter, and janitor/short-order cook. (Tr. 42, 60).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

2

attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. Statutory and Regulatory Framework

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Knight met the insured status requirements of the Social Security Act through December 31, 2017, and that Knight had not engaged in substantial gainful activity since her alleged onset date. (Tr. 20). At Step Two, the ALJ found Knight had the following severe impairments: obesity, diabetic neuropathy, and diabetes. (Tr. 20). At Step Three, the ALJ found Knight does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24).

Before proceeding to Step Four, the ALJ determined Knight's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Knight has the RFC

> To perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with no pushing and/or pulling with the lower extremities, occasional stooping and crouching, no operation of foot controls, and no climbing. She should work in a temperature-controlled environment.

(Tr. 24).

At Step Four, the ALJ determined Knight has been unable to perform any past relevant work. (Tr. 30). At Step Five, the ALJ determined that, considering Knight's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Knight could perform. (Tr. 30-31). Therefore, the ALJ concluded Knight had not been under a disability through the date of his decision. (Tr. 32).

**V. Analysis**

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Knight argues the Commissioner's decision she can perform medium work (with some limitations) is not supported by substantial evidence because her pain and fatigue prevent her from doing so. (Doc. 13 at 12). This argument breaks down into two sub-arguments: (1) the ALJ improperly discounted the opinion of Dr. Kelli Grinder, Knight's treating physician, (*id.* at 12-14) and (2) the ALJ improperly applied the Eleventh Circuit's pain standard, (*id.* at 14-15). Knight

5

also argues a "middle ground" existed for awarding her partial benefits after age 55 (i.e., after July 31, 2015). (*Id.* at 16).

**A. The ALJ Properly Evaluated Dr. Grinder's Opinion**

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Dr. Grinder completed a "Clinical Assessment of Fatigue/Weakness" form on August 30, 2016. (Tr. 333). In it, Dr. Grinder was asked to answer four questions "according to [her] best clinical judgment." (Tr. 333). Dr. Grinder indicated fatigue and weakness would negatively affect

6

Knight's adequate performance of daily activities and work;[4] physical activity (such as walking, standing, bending, stooping, moving of extremities, etc.) would greatly increase Knight's level of fatigue/weakness, causing total abandonment of those tasks; the side effects of prescribed medication could be expected to be severe and limit Knight's effectiveness due to distraction, inattention, drowsiness, etc.; and Knight had an underlying medical condition that could be expected to produce her fatigue/weakness. (*Id.*).

The same day, Dr. Grinder also completed a "Clinical Assessment of Pain." (Tr. 338). On that form, Dr. Grinder stated Knight's pain is present to such an extent as to negatively affect adequate performance of daily activities or work; physical activity (such as walking, standing, bending, stooping, moving of extremities, etc.) would greatly increase Knight's pain, causing distraction from or total abandonment of the task; Knight's medical condition, including pain and other subjective symptoms, would compromise her ability to sustain work activity on a regular basis to the extent Knight would be absent more than four times per month; and side effects of prescribed medication could be expected to be severe and limit Knight's effectiveness due to distraction, inattention, drowsiness, etc. (*Id.*). Dr. Grinder further indicated Knight's medical condition could reasonably be expected to produce the pain she described. (Tr. 339). Dr. Grinder also circled "Yes" in response to the question "Did this patient experience pain at the level of severity as indicated above on or about (alleged onset date) _____?" even though no date is filled in the blank. (*Id.*).

---

[4] Dr. Grinder appears to have also circled the letter indicating "[f]atigue/weakness is present, but does not prevent functioning in everyday activities." (Tr. 333). The ALJ assumed Dr. Grinder intended the more restrictive assessment, and neither Knight nor the Commissioner say otherwise.

7

Finally, Dr. Grinder completed a "Functional Assessment (Physical)." (Tr. 340). Dr. Grinder indicated Knight could stand for two hours at a time for a total of two hours per day; walk for less than one hour at a time for a total of less than one hour per day; but sit for an unlimited amount of time. (*Id.*). According to Dr. Grinder, Knight could both lift and carry less than twenty pounds frequently. (*Id.*). Dr. Grinder checked boxes indicating Knight can: frequently push/pull, use both arms, handle, and reach; occasionally use both legs and climb; never balance, stoop, kneel, crouch, or crawl; but had no limitations in feeling, talking, or hearing. (*Id.*).

The ALJ assigned little weight to all three of these. (Tr. 28-29). The ALJ observed Dr. Grinder's ongoing treatment notes did not document ongoing weakness and fatigue, severe pain, or functional limitations at all, and certainly not to the degree Dr. Grinder indicated. (*Id.*). Instead, the notes showed a full range of motion and only noted problems when Knight did not follow her treatment regimen and her blood sugar spiked. (*Id.*).

Knight argues the ALJ erred by adopting an "all-or-nothing" approach to Dr. Grinder's opinion, concluding she "is either as limited as Dr. Grinder says or not at all." (Doc. 13 at 13). Knight further states "[j]ust because the ALJ does not fully agree with all the limitations stated in Dr. Grinder's report does not mean Ms. Knight is not limited at all."[5] (*Id.* at 13-14). Neither of these arguments point to an error in how the ALJ assessed Dr. Grinder's opinion. In fact, Dr. Grinder's records are consistent with the ALJ's characterization and inconsistent with Dr. Grinder's August 30, 2016 opinions. On visits dating from October 10, 2014, (tr. 331), to August 11, 2015, (tr. 305), Dr. Grinder consistently reported Knight had a full range of motion, (tr. 310,

---

[5] Although it is not material to how the ALJ evaluated Dr. Grinder's opinion, the undersigned also notes the ALJ did not conclude "Ms. Knight is not limited at all," as she states. Rather, "giving the claimant the benefit of the doubt," the ALJ imposed exertional and environmental limitations over and above limiting Knight to medium work. (Tr. 24, 28).

318, 328). Knight's visits to Dr. Grinder were either for issues related to Knight's diabetes, (tr. 325, 317), or for one-off medical problems such as dizziness and vertigo on October 9, 2014, (tr. 330), or for a urinary tract infection on June 18, 2015, (tr. 312-314). This latter visit was the only time Knight reported pain or distress. (Tr. 313). And Dr. Grinder's recommendations were not drastic; acetaminophen, liquids, and rest for the urinary tract infection, (tr. 314), maneuvers to self-treat vertigo, (tr. 331), and diet, exercise, and metformin to treat Knight's diabetes, (tr. 306, 317, 325, 329). To the extent Dr. Grinder's opinion cites medication side effects, none are indicated in the medical record. Rather, the record indicates when Knight was compliant with diet, exercise, and medication, Dr. Grinder indicated Knight was "doing well." (Tr. 317-18).

The divergence between Dr. Grinder's own medical records and her considerably more restrictive function reports provided good cause for the ALJ to discount her opinion. Therefore, the ALJ did not err in assigning Dr. Grinder's opinion little weight.

**B. The ALJ's Credibility Determination Was Supported by Substantial Evidence**

Next, Knight argues the ALJ improperly discredited her pain testimony. The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553,

9

1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

After considering the evidence, the ALJ cited the appropriate standard, (tr. 25), and found that while Knight's alleged impairments might cause some symptoms that would cause some limitations, Knight's statements concerning the intensity, persistence and limiting effects of her impairments were not consistent with the objective medical evidence. (Tr. 29). The record contains substantial evidence to support this determination.

In her brief, Knight recounts her testimony that her diabetic neuropathy causes pain and swelling, preventing her from waking without pain and requiring her to wear an ice pack on her feet when she sleeps. (Doc. 13 at 15) (citing tr. 44-45). Knight also notes her testimony that she takes Aleve and Neurotonin three times a day for pain, and that her medications make her "so sleepy she can hardly hold her eyes open." (*Id.*) (citing tr. 46). Knight points to her testimony regarding her neck and back pain, which cause pain when she moves her neck from side to side, when she sits for any length of time, when she walks, and when she gets up. (*Id.*) (citing tr. 46-47, 51-52). Knight then states the ALJ discredited this testimony "because he does not believe that she is 'totally' disabled as her treating physician Dr. Grinder reports." (*Id.*).

Contrary to Knight's characterization, the ALJ did not dismiss Knight's testimony simply because he discredited Dr. Grinder's report. In addition to the inconsistencies between Dr. Grinder's opinion and the medical evidence, the ALJ pointed to multiple other inconsistencies between Knight's testimony and the record. First, the ALJ compared Knight's complaints of debilitating back pain to the medical evidence, which showed several visits to chiropractors in 2013, but no treatment for back pain since that point. (Tr. 26). The ALJ also noted Knight's June 18, 2015 visit to Dr. Grinder complaining of back pain, but noted that turned out to be a urinary tract infection (as described above). (*Id.*). Further, the ALJ observed that Knight had rarely complained of pain — neuropathy or back — at doctor's visits, and her physical examinations have largely been normal. (*Id.*). And the ALJ found no evidence Knight had ever been prescribed medication for back pain, and that to the extent Knight takes Neurotonin, it must be effective given her lack of complaints of neuropathy pain. (Tr. 26).

Next, the ALJ discussed an April 7, 2015 consultative physical examination with Dr. Celtin Robertson. (Tr. 27). Dr. Robertson described Knight's history of present illness only as a hot

11

sensation in her hands and feet, which had neither improved nor worsened in the 7-8 months since she first observed it. (Tr. 299). At the examination, Dr. Robertson observed Knight walking into the exam room without assistance. (Tr. 300). Dr. Robertson stated Knight could get on and off the examination table and was sitting without acute distress. (*Id*.). Knight described her symptoms as heat at her hands and feet, which she characterized as an annoyance. (*Id*.). Dr. Robertson's findings were relatively unremarkable. He found Knight had a normal gait and was able to toe heel walk, squat, and rise. (Tr. 301). Dr. Robertson did not indicate he considered the results of any of a battery of range of motion tests to be abnormal. (*Id*.). Dr. Robertson observed 5/5 motor strength in Knight's upper and lower extremity muscle groups including bilateral grip strength. (Tr. 302). Knight's straight leg raise was negative for sciatica. (*Id*.). Based on his examination, Dr. Robertson limited his diagnosis to "paresthesias as per claimant" and imposed no standing, walking, sitting, lifting, fine/gross manipulative activity, postural, or workplace/environmental restrictions on Knight. (Tr. 302-03). The ALJ gave Dr. Robertson's opinion great weight, concluding his examination finding no significant limitations comported with the medical evidence indicating the same. (Tr. 28).

The ALJ additionally found Knight's allegations her pain prevents her from doing daily activities was inconsistent with the record. (*Id*.). The ALJ noted Knight had reported to consultative psychological examiner Dr. Michael M. Holt that she does light housework, shopping, meal preparation, and independent personal care, as well as spending time with her family. (Tr. 28, 295). During the consultative examination with Dr. Robertson, Knight reported she took care of personal needs, meal preparation, household chores, and laundry. (Tr. 299). Additionally, the ALJ found Knight's complaints at the hearing were inconsistent with her own function report, in

12

which she indicated she does meal preparation, cleaning, and laundry, drives, and goes to the store for groceries once or twice a week. (Tr. 30, 219-23).

Because Knight does not acknowledge the ALJ based his decision on anything beyond his rejection of Dr. Grinder's opinion, she does not engage with any of these portions of the ALJ's decision or explain how the ALJ erred in considering any of the other inconsistencies between her testimony and the record. To the contrary, the ALJ articulated "explicit and adequate reasons," *Wilson*, 284 F.3d at 1225, for discounting Knight's subjective descriptions of her pain. "The question is not . . . whether the ALJ could have reasonably credited [Knight's] testimony, but whether the ALJ was wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). Here, substantial evidence supports the ALJ's decision to discredit Knight's testimony, and Knight has not shown any reason why the ALJ's application of the Eleventh Circuit pain standard was reversible error.

### C. The ALJ Did Not Err in Not Awarding Partial Disability Benefits

Knight finally argues there is "substantial middle ground for awarding [her] at least partial disability benefits after age 55." (Doc. 13 at 16). She points to the Medical Vocational Guidelines — the "grids" — found in 20 C.F.R. § 404.00, Subpart P, Appendix 2. (*Id*.). Specifically, Knight cites grid rules 202.01 and 202.02, in which a person limited to light work who is of advanced age, with limited or less education, is considered disabled if she has unskilled or no previous work experience (202.01) or skilled or semiskilled previous work experience with nontransferable skills (202.02). (*Id*.). Knight states she turned 55 prior to the date of the ALJ's decision (making her a person of advanced age, *see* 20 C.F.R. § 404.1563(e)).

Knight's argument appears to focus on what the ALJ could have done had he credited more of Dr. Grinder's opinion or more of Knight's own pain testimony and limited her to light work,

rather than the medium work (with some additional restrictions) to which he actually limited her, (*see* tr. 24). Because Knight has not pointed to any reversible error in the ALJ's handling of either of those issues, it is immaterial that the ALJ's ultimate conclusion could have been different, and his decision not to award partial benefits was not reversible error.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Knight's claim for a period of disability, SSI, and DIB is **AFFIRMED**.

DONE this 29th day of March, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE